IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS B. HORTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-2318-X-BN |
| | § | |
| LEAFFILTER NORTH LLC, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Lucas B. Horton filed a *pro se* complaint against Defendant LeafFilter North, LLC ("LeafFilter") alleging violations of the Telephone Consumer Protection Act and Texas law. *See* Dkt. No. 2.

United States District Judge Brantley Starr referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

LeafFilter moved to compel arbitration. *See* Dkt. Nos. 14 & 15. Horton responded, and LeafFilter replied. *See* Dkt. Nos. 16-19.

And, to the extent that, without first obtaining leave, Horton filed a response to LeafFilter's reply, that filing counts as an unauthorized sur-reply. *See Gezu v. Charter Commc'ns*, 17 F.4th 547, 556 (5th Cir. 2021) ("Because the rules do not provide for surreplies as a matter of right, the district court only accepts such filings 'in exceptional or extraordinary circumstances.'" (quoting *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001))).

And, while, "[o]rdinarily, sur-replies are 'heavily disfavored,' and the decision

to allow a sur-reply lies within the district court's discretion," "when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (quoting *Butler v. S. Porter*, 999 F.3d 287, 297 (5th Cir. 2021)).

And, so, if LeafFilter's reply raises new arguments or evidence for the first time, the Court will not rely on those arguments or evidence. The Court will therefore also not consider Horton's construed sur-reply.

LeafFilter's motion, if granted, would require that the Court not dismiss but stay this proceeding while the parties' dispute is subjected to arbitration under the Federal Arbitration Act ("FAA"), *see Smith v. Spizzirri*, 601 U.S. 472, 474 (2024), which further supports that – although the United States Court of Appeals for the Fifth Circuit has yet to definitely say so, *see Lee v. Plantation of La., LLC*, 454 F. App'x 358, 359 n.3 (5th Cir. 2011) (per curiam) (declining to reach the issue) – a motion to compel arbitration is nondispositive, and, so, "a magistrate judge may issue a definitive order, rather than a report and recommendation, on the motion," *e.g.*, *Balderrama v. Deployed Servs., LLC*, ___ F. Supp. 3d ____, EP-25-CV-00214-KC, 2026 WL 301071, at *9 n.58 (W.D. Tex. Jan. 28, 2026) ("For purposes of [28 U.S.C.] § 636(b)(1)(A), a motion to compel arbitration and to stay the case pending arbitration is not the functional equivalent of an order of dismissal, because granting the motion does not conclusively terminate the matter in the federal court" – that is, a "'stay' in

§ 3 of the FAA 'denotes the "temporary suspension" of legal proceedings, not the conclusive termination of such proceedings,' and '§ 3 ensures that the parties can return to federal court if arbitration breaks down or fails to resolve the dispute.'" (cleaned up; quoting *Spizzirri*, 601 U.S. at 477; citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) ("A federal court's ruling on a motion to stay litigation pending arbitration is not dispositive of either the case or any claim or defense within it…. Thus, there is no final exercise of Article III power at the time the court acts on the motion to stay." (citations omitted)); *see also Yanez v. Dish Network, L.L.C.*, No. 1:20-CV-177, 2021 WL 4691909 (S.D. Tex. Apr. 23, 2021) (magistrate judge's order granting motion to compel affirmed under FED. R. CIV. P. 72(a), *see* 1:20-CV-177, Dkt. No. 30 (S.D. Tex. June 2, 2021)), *aff'd*, 140 F.4th 626 (5th Cir. 2025); *cf. In re Ibiuna Credito Gestao de Recursos Ltda.*, No. 3:24-mc-24-D-BN, 2024 WL 4309481, at *3 (N.D. Tex. Aug. 8, 2024) (comparing various motions and observing that motions considered to be not dispositive are those that are "not listed in 28 U.S.C. § 636(b)(1)(A) and do not have an identical effect to, or amount to the functional equivalent of, one of the listed motions and where resolving those motions does not terminate the only matter pending in federal court or any claim or defense and does not dispose of or bring an end to the underlying matter that is or will be pending in another federal court" (citations omitted)), *rec. adopted sub nom. In re Application of Ibiuna Credito Gestao de Recursos Ltda.*, No. 3:24-mc-24-D, 2024 WL 4314985 (N.D. Tex. Sept. 26, 2024).

The undersigned therefore enters this memorandum opinion and order

denying without prejudice the motion to compel arbitration for the reasons and to the extent set out below.

## Applicable Background

According to LeafFilter,

[o]n May 1, 2025, Plaintiff visited the website https://www.leaffilter.com/ and submitted his personal information and requested an appointment for services. (*See* Declaration of Samantha Albarran (the "Albarran Decl.") attached as Exhibit A.) In visiting this website, Plaintiff identified the service he needed and provided his personal information including his address, email address and telephone number. (*Id.* ¶¶ 5-7.) The name provided was Lucas Horton and the last four digits of the phone number provided were 3341. (*Id.* ¶ 7.) Plaintiff's information was also submitted from an IP address matching an area near Richardson, Texas. (*Id.* ¶ 8.)

In filling out this submission, Plaintiff was provided with multiple screens that Plaintiff had to click through and on each occasion agreed to the Terms of Use. (*See id.* ¶ 9.) This included a screen where various questions were posed about the house itself, a screen where the service needed was selected, a screen where the type of roof was identified and a screen where an individual could identify as a senior or member of the military. (*Id.* ¶ 10.) Each screen included a button reading "Next," immediately beneath which included the language: "By submitting this form, I agree to the Leaf Home Terms of [U]se and Privacy Policy, as well as to receive SMS and calls about my projects." (*Id.* ¶ 11.) On each page, the Terms of Use and Privacy Policy were hyperlinked. (*Id.* ¶ 12.) And at the conclusion of this flow, Plaintiff encountered [a] page where he provided his phone number … and checked [a] box [next to "Text me reminders and updates" that was followed by language providing in part that, "[b]y providing your phone number above and checking this box, you agree to receive automated text messages from LeafFilter and also agree to our Terms of [U]se and Privacy Policy" (both terms hyperlinked)]. (*Id.* ¶¶ 13 & 14.) Plaintiff also proceeded to schedule an appointment. (*Id.* ¶ 14)

The hyperlinked "Terms of Use" language in each of the screens Plaintiff encountered directs users to the following webpage: https://www.leafhome.com/terms-of-use/. (*Id.* ¶ 15, *see also* Ex. 1 thereto [the "Terms"].) The Terms include a number of critical arbitration-related terms. Specifically, the Terms provide that the following:

You and we hereby agree and consent that any claim, controversy, or dispute related to or arising out of access to

and use of the Services, our marketing or communication with you, these Terms of Use (including the breach hereof), any promotions offered by Leaf Home, or telephonic outreach, whether based in contract, tort, statute, or other legal theory ("Disputes"), will be resolved by binding arbitration before a single arbitrator as described below. The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of this agreement to binding arbitration, including, but not limited to, any claim that all or any part of this arbitration agreement is void or voidable.

(*See* Terms at p. 13-14.) The Terms also include that arbitration will be administered by the American Arbitration Association in accordance with its Consumer Arbitration Rules. (*See id.*)

Dkt. No. 15 at 7-10 (cleaned up).

Horton responded in part through a declaration identifying three IP addresses associated with his desktop, personal cell phone, and work cell phone and in which he affirms that he "never contacted LeafFilter in any way to request the appointment they showed up for at my house on May 6[, 2025]." Dkt. No. 16-3 (further affirming that "[t]here was no consent to any of LeafFilter's terms because I never requested the appointment" and that he "never agreed to an arbitration clause because I did not request the appointment"); *see also* Dkt. No. 17 (correcting the IP addresses for the phones but not through sworn testimony).

To which LeafFilter replies in part,

[t]he crux of the dispute here is whether Plaintiff engaged in the website visit articulated in LeafFilter's Motion and accompanying evidence. Plaintiff, however, submits no evidence on this issue. In Plaintiff's Declaration, he states only that he "never contacted LeafFilter in any way to request the appointment." Plaintiff provides no attestation as to whether he in fact visited the website in question or not. Plaintiff does argue in his brief that he "never went to LF's website," but provides no evidence in support of that statement.

- 5 -

Dkt. No. 19 at 4 (cleaned up).

As to the IP addresses that Horton provides evidence of, LeafFilter also responds that "the original and corrected IP addresses submitted by Plaintiff do not match the IP address in LeafFilter's records of the website visit at issue" and that, "[s]hould this Court find Plaintiff has created a dispute a fact, the user of the IP address in LeafFilter's records can be identified by simple subpoena to the internet service provider, and a deposition of Plaintiff to determine the full array of electronic devices in his possession." *Id.* at 4 n.3; *see also id.* at 4 ("Should this Court find that Plaintiff has created a dispute of fact as to whether he visited the website at issue and entered into an agreement to arbitrate, LeafFilter requests that this Court (1) hold a [Federal Rule of Civil Procedure] 16 conference to set a discovery schedule on this issue and then (2) order a jury trial as to whether Plaintiff has entered into an agreement to arbitrate." *E.g., id.*; *cf.* Dkt. No. 15-3 at 5-6 (Sept. 8, 2025 email from LeafFilter's counsel to Horton stating in part, "[p]er our email exchange below, it appears that you dispute having ever visiting the leaffilter.com website").

## Discussion

"[A]rbitration is a matter of contract," so "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). And the FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And, so, a party may

bring a motion to compel arbitration under the FAA, and a court must direct parties to arbitration if it is "satisfied that the making of the agreement for arbitration ... is not in issue." *Id.* § 4.

"Whether a party may be compelled to arbitrate is a two-step inquiry: did 'the parties agree to arbitrate'; and does 'any federal statute or policy render the claims nonarbitrable'" – and step one of this inquiry is itself "a two-step inquiry: 'is there a valid agreement to arbitrate'; and 'does the dispute in question fall within its scope.'" *Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046, at *3 (5th Cir. May 4, 2022) (per curiam) (cleaned up; quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)).

And, so, "the only issue at the first step is whether there is any agreement to arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).

And any policy favoring arbitration has never "appl[ied] to the initial determination whether there is a valid agreement to arbitrate." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *cf. Twn. of Vinson v. Certain Underwriters at Lloyds London*, 706 F. Supp. 3d 602, 608 (W.D. La. 2023) (explaining that *Morgan v. Sundance*, 596 U.S. 411 (2002), "clipped the wings of the oft quoted 'strong federal policy favoring arbitration' created by the FAA, explaining that the FAA's policy only makes arbitration agreements as enforceable as other contracts, but not more so, and does not permit federal courts to devise novel rules to favor

arbitration over litigation").

"When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302-03 (5th Cir. 2021).

The parties appear to agree that Texas law applies. *Compare* Dkt. No. 15 at 11-12, *with* Dkt. No. 16 at 1, and the Court agrees with LeafFilter that there's no substantive difference between the two options here: Texas law or Ohio law, *cf. Phillips v. Neutron Holdings, Inc.*, No. 3:18-cv-3382-S, 2019 WL 4861435, at *3 (N.D. Tex. Oct. 2, 2019) ("Nonetheless, both Plaintiff[s] and [Lime] cite Texas law, and, thus, the Court applies Texas law." (quoting *Castaneda v. Swift Transp. Corp.*, No. EP-07-CA-369-DB, 2008 WL 1850652, at *2 (W.D. Tex. Apr. 25, 2008); footnote omitted)).

"Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (cleaned up).

"Generally, Texas law holds internet agreements enforceable." *Jones v. Homeaglow Inc.*, No. 3:25-cv-249-S, 2025 WL 2816792, at *3 (N.D. Tex. Oct. 1, 2025) (collecting cases).

- 8 -

And, under Texas law, "[c]ourts have recognized that different types of online agreements demand slightly different analyses" and fall on a spectrum ranging from 'clickwrap' to 'browsewrap.'" *Id.* at *4 (citations omitted).

- "Clickwrap agreements are generally defined by the requirement that users assent to contract terms by 'clicking' some sort of 'I agree' or 'accept' button on a website to complete the transaction." *Id.* (cleaned up).

- "Browsewrap agreements, on the other end of the spectrum, do not require the user to manifest assent to the terms and conditions of a website expressly. A browsewrap agreement typically involves a situation where a notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink. Instead of clicking an 'I accept' or 'I agree' button, the user assents to the terms of a browsewrap agreement 'simply by using the website.' Texas law leaves the enforceability of browsewrap more open. That is, the enforceability of browsewrap agreements turns on whether the user of the website had actual or constructive knowledge of a site's terms and conditions prior to using the site." *Id.* (cleaned up).

- A sign-in-wrap agreement is, "to some extent," "a hybrid form of a clickwrap and browsewrap agreement. A sign-in-wrap agreement notifies website users of the existence of the website's terms and conditions and advises users that they are agreeing to the terms when registering an account or signing in. As with browsewrap agreements, a sign-in-wrap agreement's enforceability generally turns on whether notice of the terms and conditions was reasonably conspicuous." *Id.* (cleaned up).

LeafFilter submits that the online agreement here is either a clickwrap agreement or a sign-in-wrap agreement. *See, e.g.*, Dkt. No. 15 at 16-17.

And, while LeafFilter is correct that Horton takes no issue with either characterization, *see* Dkt. No. 19 at 2; *see generally* Dkt. Nos. 16 & 17, "[c]ourts have the power and duty to find and apply the correct legal principles regardless of what

the parties say," *United States v. Ball*, ___ F.4th ___, No. 25-60396, 2026 WL 1041938, at *1 (5th Cir. Apr. 16, 2026) (published order) (Oldham, J., concurring).

And, so, the Court finds that LeafFilter's online agreement is properly characterized as a hybrid sign-in-agreement. *Compare, e.g.*, *Phillips*, 2019 WL 4861435, at *4 ("The User Agreement does not fit neatly into either category. Like most clickwrap agreements, Lime does not present users with an 'accept' button or box. But unlike browsewrap agreements, Lime requires users to affirmatively click either the 'NEXT' or 'Continue with Facebook' button after being presented with a link to the User Agreement. Though the Fifth Circuit has not spoken on this issue, some courts have deemed this type of agreement to be a 'sign-in-wrap.'" … And, because "[u]sers are not required to click a separate 'I agree' button," "[t]he User Agreement … is best characterized as a sign-in-wrap." (cleaned up)), *with Cooper v. Endurance Deal Servs., LLC*, No. 25 C 2919, 2025 WL 3281681, at *10 (N.D. Ill. Nov. 25, 2025) ("The button available to both Rinella and Rumpf was a 'Get a FREE Quote' button – not an 'I Accept' button. Contrary to Endurance's assertion, then, these are not 'clickwrap' agreements." (citations omitted)).

And, because "[t]he chief consideration when determining the validity of contractual terms –in contracts with or without a nexus to the internet – is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms," *Jones*, 2025 WL 2816792, at *5 (quoting *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 448 (N.D. Tex. 2019)), the Court turns next to Horton's contentions that no agreement to arbitrate exists.

The Fifth Circuit

> "has not articulated precisely what quantum of evidence is necessary to prove or disprove the existence of an agreement to arbitrate." *Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (citing *Dillard v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992)). To answer that question, *Gallagher* points to the test under the FAA, 9 U.S.C. § 4 (permitting trial on arbitration agreement's formation if "in issue"), employed in *Dillard*. 860 F. App'x at 357. The test requires the party opposing enforcement to "make at least *some showing* that[,] under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true." *Dillard*, 961 F.2d at 1154 (emphasis added). The "some showing" standard requires: unequivocally denying entering the contract, *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980); and producing evidence sufficient to substantiate that allegation, *Dillard*, 961 F.2d at 1154.

*Soni*, 2022 WL 1402046, at *3 (again declining to "decide whether the 9 U.S.C. § 4 standard in this Circuit is congruent with the summary judgment evidentiary standard of [Federal Rule of Civil Procedure] 56" (quoting *Gallagher*, 860 F. App'x at 357)); *accord Chester v. DirectTV, L.L.C.*, 607 F. App'x 362, 363-64 (5th Cir. 2015) (per curiam) ("To put the making of the arbitration agreement 'in issue,' Chester was required to 'unequivocally deny' that he agreed to arbitrate and produce 'some evidence' supporting his position." (cleaned up; quoting *T & R Enters.*, 613 F.2d at 1278)); *Yanez*, 140 F.4th at 630 (same).

Meeting the "some showing"/"mandated unequivocal denial" standard "requires more than 'self-serving affidavits' containing 'hollow, bald assertions.'" *Soni*, 2022 WL 1402046, at *4 (quoting *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002)).

*Orr* demonstrates, for example, that arbitration may not be avoided through affidavits challenging an agreement's "procedural or substantive unconscionability,"

which "is not the equivalent of questioning the 'making' of an arbitration agreement." *Orr*, 294 F.3d at 710 (Though their affidavits, Appellants claim "that Appellees did not explain the Agreements to Appellants or that Appellants did not realize that they were waiving a trial by jury. The affidavits proffered by Appellants, however, amount to nothing more than hollow, bald assertions that do not approach fraud in the 'making' of the Agreements. Furthermore, Appellants' affidavits fail to identify any misrepresentation by Appellees peculiar to the Agreements, which forecloses Appellants' ability to state a claim of fraud in the inducement. Other than their self-serving affidavits, Appellants have not submitted a whisper of evidence to support the conclusion that a jury trial is warranted under § 4 of the FAA." (citations omitted)).

And Soni's sworn statements – his "'not recalling' signing the agreement; and 'believing' he would have saved a copy of that allegedly electronically signed agreement had he signed it" – fell "far short of the requisite unequivocal denial, considering" in part that "the Solera declaration's having as an exhibit the agreement electronically signed by Soni." *Soni*, 2022 WL 1402046, at *4.

But, in *Chester*, the plaintiff "unequivocally denied signing an arbitration agreement" and "provided some evidence that he did not sign an arbitration agreement – his affidavit," which contained "more than 'hollow, bald assertions'" because Chester explained "why he is convinced that he did not sign the arbitration agreement. Second, there is some corroborating evidence that Chester did not sign the agreement, given that DIRECTV has admitted that it cannot find the agreement.

- 12 -

It is difficult to imagine what other evidence Chester could have presented to prove

a negative (i.e., to prove that he did not sign the arbitration agreement)." 607 F. App'x

at 364 & n.4.

And, considering evidence offered to defeat a motion more generally, the Fifth

Circuit has observed, in the summary judgment context, that

> "[e]vidence proffered by one side to ... defeat a motion for summary
> judgment will inevitably appear 'self-serving,'" *Dallas/Fort Worth Int'l*
> *Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir.
> 2016), but "self-serving" evidence cannot be discounted on that basis
> alone, *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir.
> 2021). Self-serving declarations, like all summary judgment evidence,
> must be "made on personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant or declarant is
> competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). And
> these facts must be particularized, not vague or conclusory. *Guzman*, 18
> F.4th at 161 (citing *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir.
> 2013)). Broad legal or factual assertions in an affidavit that are
> unsupported by specific facts are generally held to be conclusory. *See id.*

*Cloud49, L.L.C. v. Rackspace Tech., Inc.*, No. 24-50385, 2025 WL 763474, at *3 (5th

Cir. Mar. 11, 2025) (per curiam).

And, so, Horton's affidavit should not be discounted just because he proffers it

where he is competent to testify to facts based on his personal knowledge.

But the Court still must consider whether Horton's sworn statements are too

conclusory – or not unequivocal enough – to get the job done.

And Horton's alleging that he "never went to [LeafFilter's] website" but only

offering evidence that he "never contacted LeafFilter in any way to request the

appointment"; and that "[t]here was no consent to any of LeafFilter's terms because

[he] never requested the appointment"; and that he "never agreed to an arbitration

clause because [he] did not request the appointment" does not alone carry his burden

to put the arbitration agreement's formation "in issue" through evidence sufficient to substantiate his denials that he entered into a contract with LeafFilter where, based on LeafFilter's evidence, requesting an appointment was not the only way to submit to its terms of use and its arbitration provisions.

That said, the record does not quiet the Court's concerns as to whether LeafFilter has shown that Horton himself interacted with its website where it's unclear that an IP address associated with a device belonging to Horton interacted with the website, so it has yet to be shown that a contract was formed between Horton and LeafFilter. *Compare cf. Morton v. Alleviate Tax, LLC*, No. 3:14-cv-2263-N, 2025 WL 1174732, at *1 (N.D. Tex. Mar. 17, 2025) ("Alleviate Tax argues that Plaintiff Jan Morton's claims are subject to mandatory arbitration because she agreed to Alleviate Tax's terms and conditions –which include an arbitration provision – by accepting a clickwrap agreement on its website. Alleviate Tax presents a Certificate of Authenticity for Web Leads showing that on January 18, 2024, an internet user with an IP address of 96.40.35.84, who was using the Chrome 129.0.0.0 browser, and whose approximate geographic location was Fort Worth, accepted Alleviate Tax's clickwrap agreement. Morton disputes that she is the internet user who accepted the clickwrap agreement on January 18, 2024. She states that her IP address is not 96.40.35.84, her internet provider is different from the provider of the 96.40.35.84 address, she was not in Fort Worth on January 18, 2024, and her internet history contains no record of visiting Alleviate Tax's website. Based on this record, the Court cannot determine whether Morton is the internet user who consented to the

arbitration provision in Alleviate Tax's terms and conditions, and thus whether a contract was formed between Morton and Alleviate Tax." (citations omitted)), *with Aldridge v. Checkr, Inc.*, No. SA-19-CA-1013-FB, 2019 WL 8135616, at \*5 (W.D. Tex. Nov. 27, 2019) ("[P]laintiff does not dispute the affidavit of defendant's Director of Operations who asserted that plaintiff accessed Checkr's online application portal on January 28, 2019; that plaintiff was required to enter her personal identifying information before accessing the application portal; that plaintiff was presented with Checkr's TOS before being allowed to access the applicant portal; and plaintiff electronically consented to the TOS from IP Address 172.69.69.230 at 10:54 p.m. on January 28, 2019.").

## Conclusion

The Court DENIES WITHOUT PREJUDICE Defendant LeafFilter North, LLC's motion to compel arbitration [Dkt. No. 14].

So, by **May 19, 2026** – and after conferring in person, by telephone, or over an online platform such as Zoom – the parties shall file a joint status report under Federal Rule of Civil Procedure 26(f) to propose an expedited procedure to address the concerns set out above and to resolve whether there is a valid agreement to arbitrate.

SO ORDERED.

DATED: April 27, 2026

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE